**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SARAH MCCRIMMON and CARON
DETTMANN, as Co-Administrators of
the Estate of Curtis Dettmann,

     Plaintiffs,

v.                                   Case No.: 3:20-cv-00036-BJD-JRK

CENTURION OF FLORIDA, LLC, et al.,

     Defendants.

_____/

**CENTURION DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Federal Rule of Civil Procedure 26(c), and Local Rule 3.01, Defendants Centurion of Florida, LLC ("Centurion"); Rakesh Sharma; Marinette Gonzalez Morales; David Rodriguez; Gerardo Pedroza; Tanesha Adkins; Elizabeth Morton; Clarissa Moody; Priscilla Roberts; Tamara Taylor; Alex Renelus; and Kayla McCarter (collectively, the "Centurion Defendants") file this response to Plaintiffs' motion to compel related to electronically stored information ("ESI").

**INTRODUCTION**

Plaintiffs seek to compel the Centurion Defendants to conduct certain ESI searches arguing the searches are likely to return relevant information. But Plaintiffs entirely ignore the second touchstone of discovery: proportionality. Indeed, the word does not even appear in their motion. As the Centurion Defendants have maintained

1

for months, Plaintiffs' requests for additional ESI searches and expanded date ranges are not proportionate to the needs of this case. Accordingly, Plaintiffs' motion to compel should be denied, and a protective order should be entered.

## BACKGROUND

Plaintiffs are suing the Centurion Defendants and co-Defendants regarding the 2018 death of Curtis Dettmann, who was incarcerated in the custody of the Florida Department of Corrections ("FDC") at Reception Medical Center ("RMC"). Specifically, Plaintiffs have sued (1) each of the individual Centurion Defendants for deliberate indifference under § 1983, (2) Centurion for deliberate indifference under § 1983 (the "*Monell* Claim"), (3) most of the individual Centurion Defendants for intentional infliction of emotion distress, and (3) Centurion for wrongful death.

Discovery has been exhaustive. Before suit was filed, the parties exchanged hundreds of pages of documents, including medical and prison records for Curtis Dettmann. After the case was filed, the Centurion Defendants produced approximately another 1,000 pages of records, excluding ESI. The Centurion Defendants have also responded to interrogatories. And the Centurion Defendants and Plaintiffs are coordinating depositions of some defendants.

Additionally, Plaintiffs have asked Centurion to conduct certain ESI searches. The details of those searches and the parties' disagreements are set forth below.

### A. The Centurion Defendants' ESI Search and Production

The Parties attempted to reach an agreement regarding production of ESI, which involved negotiations about (1) the custodians, (2) the search terms, and (3) the

timeframe to be searched. Before addressing those disagreements, it is necessary to understand the technological system Centurion uses to store its e-mails: Barracuda Message Archiver ("Barracuda"). Affidavit of Rory Griffin, ECF No. 149-1. Barracuda archives e-mails of individuals working with the wholly-owned subsidiaries of Centurion, LLC across multiple state contracts. *Id.* at ¶ 2–3. Barracuda can search e-mails through searches using "AND" and "OR" as connectors; it cannot use complex Boolean searches, such as "/s" or root expanders. *Id.* at ¶ 3. Barracuda can also search by date range, by specific custodians, or by domain. *Id.* As to domain, individuals working with Centurion had an e-mail address with the domain "centurionoffl.com" until 2018. *Id.* at ¶ 4. After that, they received the additional e-mail domain "teamcenturion.com," which is shared with all wholly-owned Centurion, LLC subsidiaries. *Id.* at ¶ 4.

Once data is captured in Barracuda, it is uploaded to a Relativity platform managed by a third-party, which charges for storage of the data. *Id.* at ¶ 10. Once in Relativity, the data can be de-duplicated, reviewed, redacted, and bates numbered for production. *Id.* The documents found on Barracuda with hits for search terms must then be reviewed for relevancy, responsiveness, confidentiality, and privilege. *Id.*

With that framework, the Centurion Defendants summarize their e-discovery efforts to date, as well as points of disagreement with Plaintiffs.

1.      **Custodians:** Centurion believes the named individual Centurion Defendants are more than a sufficient list of custodians. Nevertheless, at Plaintiffs' request, Centurion agreed to expand its list of custodians to include 22 custodians. *Id.* at ¶ 5.

2.      **Search Terms:** After negotiations, Centurion conducted its ESI search based on the following search terms, which the Centurion Defendants believe are sufficient for both the claims against the individual Defendants as well as the *Monell* claim:

1. Curtis
2. Dettman
3. Dettmann
4. Detman
5. Detmann
6. v38231
7. 38321
8. [Curtis Dettman's SSN]
9. cdiff
10. diff
11. clostridium
12. colitis
13. ischemic
14. diaper
15. vomit
16. vomits
17. vomited
18. vomiting
19. faking
20. weight
21. perianal hidradenitis
22. j00222782749
23. me18-0060
24. 18-0060
25. caron
26. McCrimmon
27. 18-01522
28. 201711170004

*Id.*

3.      **Date Range:** The Centurion Defendants initially proposed a date range from when Mr. Dettmann began receiving treatment at RMC after his perianal hidradenitis surgery in January 2018 to May 31, 2018, to sufficiently capture communications related to Mr. Dettmann's autopsy and mortality review. During meet and confer negotiations, Plaintiffs' counsel asked if Centurion would be willing to expand the date range to begin at the date Mr. Dettmann was admitted to RMC (December 6, 2017) through the date Centurion conducts its annual mortality reviews of all cases. In a

4

good-faith effort to reach an agreement on a data range, Centurion agreed to expand the date range to **December 6, 2017 through July 31, 2018**, to capture time period of the bi-annual review of mortalities that would have included deaths which occurred in January 2018. *Id.*

Based on these custodians, search terms, and date range, there were a total of **11,106 documents** with hits, including families after de-duplication. *Id.* More than 9,000 documents have already been reviewed, but the review is not yet completed. *Id.* at ¶ 10. Centurion has spent more than $4,000 just to store the currently collected 6.8 GB of data on Relativity, which will continue to accrue at roughly $700 per month in storage costs. *Id.*

Additionally, Centurion's counsel have spent more than **283 hours** reviewing these documents to identify relevant documents responsive to Plaintiffs' discovery requests and other work related to e-discovery, incurring more than $91,000 in fees. In total, Centurion will have spent more than **$100,000** on work related to e-discovery, including searching, storing, reviewing, and producing ESI responsive to Plaintiffs' requests. To date, approximately 400 pages[1] of documents have been produced, not including native format production of other file types.

## B. Request for Additional ESI Search for *Monell* Claim

---

[1] It is worth noting that Curtis Dettmann's father is also incarcerated in FDC's custody and received treatment at RMC during the searched date range. So there are a significant number of hits relating to Curtis Dettmann's father.

In addition to the above-conducted ESI search, Plaintiffs are requesting Centurion conduct an additional ESI search regarding Plaintiffs' *Monell* claim. The search requested by Plaintiffs is for the date range of 2016 to present. Plaintiffs appeared to consent to this search being limited to the above-referenced custodians initially, but now claim there has been no agreement as to the custodians for the proposed search. Below are the 19 proposed search terms[2] solely as to the *Monell* claim:

1. (lack! OR fail! OR refus! OR not OR never OR didn't OR insufficien! OR inadequate OR adequate OR incomplete OR complete OR minimal OR incompeten! OR competen! OR unsatisf! OR satisf!) /s ((plan /3 treat!) OR diagnos! OR test!)

2. "differen! diagnosis"

3. continu! /10 (care OR healthcare)

4. (profit! OR market! OR margin! OR revenue) AND (healthcare OR care OR florida OR FDC)

5. understaff!

6. (budget! or profit!) AND (offsite OR emergen! OR special!)

7. (nurs! OR practitioner! OR doctor! OR staff!) AND (adequate OR inadequate OR enough OR sufficien! OR insufficien! OR inadequa! OR adequa! OR lean OR lack! OR minimal OR minimum OR unsatisfactory OR meager OR efficien!)

8. (combative OR difficult! OR antagon! OR argumentative OR hostile OR belli!) AND (patient OR prisoner OR offender OR inmate)

9. **malinger! OR faked OR faking[3]**

10. follow! /3 up

11. treat! /2 plan!

12. (griev! OR lawsuit OR complaint) AND diagnos!

13. (send OR refer!) /s (outside OR special! OR hospital OR diagnos! OR cost! OR expens!)

14. (order OR request OR refer) /s (test! OR diagnos! OR assess!)

15. **"c. diff" OR "c diff" OR clostridium**

16. **induc! /3 vomit!**

17. **(weight! OR pounds) /5 (lost OR loss OR drop!)**

18. (corizon OR legacy) /P (screen OR assess OR investigat! OR determin! OR inciden! OR management OR practices OR policies OR deficien!

---

[2] ECF No. 149-3 (June 4, 2021 e-mail (redacted)).
[3] Bolded terms are largely duplicative of previously conducted ESI search for the original date range.

6

OR problem OR inadequate OR "not adequate")

19. (staff! OR doctor! OR nurs! OR practitioner!) /P (hire OR hiring OR retention OR retain OR background OR screen! OR interview!)

## C. Information about Additional ESI Searches

Centurion has also conducted additional ESI trial searches so it can estimate the number of hits and costs associated with conducting Plaintiffs' requested *Monell* ESI search. Those results are summarized below.

1.  Centurion ran the term "Dettman" across all e-mail domains used by individuals working pursuant to Centurion's contract with FDC from December 6, 2017 through the present, which resulted in **5,246 e-mails or attachments to e-mails**. *Id.* at ¶ 7.

2.  Centurion considered pulling all of the email data from eight of the custodians (Sharma, Gonzalez, Rodriguez, Pedroza, Morton, Mahoney, Roberts, and Taylor) off of Barracuda and transferring it to Relativity for the period of January 1, 2018 to May 31, 2020, so it could run trial searches of some of Plaintiffs' complex Boolean proposed *Monell* terms, but doing so yielded **60 GB of data**. *Id.* at ¶ 8.

3.  Centurion ran a search of all of Dr. Sharma, Ms. Taylor, Ms. Roberts, and non-party Patrick Pultz's e-mails from December 6, 2017 through July 31, 2018, which resulted in **8,916 e-mails**. *Id.* at ¶ 9.

4.  Centurion ran a search of the proposed *Monell* search terms "diagnosis" and "healthcare" through the 22 custodians' e-mails from December 6, 2017 through July

31, 2018—an 8-month period—which returned the following numbers of hits for each term: **diagnosis, 5,128**; and **healthcare, 3,541**. *Id.* at ¶ 6.

## MEMORANDUM OF LAW

Plaintiffs' motion to compel is deficient because it completely ignores one of the touchstones of discovery—proportionality. Fed. R. Civ. P. 26(b)(1); *see also* § 2.01 Introduction, Elect. Disc. L. & Pract. 5622255 ("[P]roportionality has been enshrined on the same lofty plane as relevance as a touchstone for discovery."); *Jones v. Johnson*, 801 F. App'x 338, 351 (6th Cir. 2020) (explaining district courts need to consider "relevance and proportionality … as the touchstones in setting the scope of discovery."). Rule 26 lists non-exclusive factors to determine whether discovery requests are proportional: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

As the Commentary to Rule 26 explains, the proportionality limitation is meant "to deal with the problem of over-discovery. The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Fed. R. Civ. P. 26(b)(1), Advisory Committee's Notes to 2015 Amendment. "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Id.*

This proportionality consideration applies equally to ESI as to other forms of discovery. *Lanard Toys Ltd. v. Dolgencorp, LLC*, No. 3:15-CV-849-J-34PDB, 2016 WL 7031326, at *2 (M.D. Fla. Jan. 21, 2016); Middle District Discovery Handbook, Part VIII.C. ("The discovery of ESI should be proportional to the needs of the case…").

In considering production of ESI and whether it is proportional, the Middle District Discovery Handbook directs the parties to the Sedona Principles and the Sedona Cooperation Proclamation, often cited by courts in this district. *Id.* at Part VIII.A.; *see also The Sedona Principles, Third Edition,* 19 SEDONA CONF. J. 1 (2018). The Sedona Principles recognize "that a responding party is best situated to determine which procedures, methodologies, and technologies are appropriate for preserving and producing its own ESI," and "deference regarding the selection and implementation of the discovery process should be given to the party that will incur the costs." 19 SEDONA CONF. J. at 121. "[N]either a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations." *Id.* at 123.

When a party files a motion to compel, the Sedona Principles explain the movant "must demonstrate that the discovery response was inadequate and that additional steps are warranted." *Id.* at 131. And when ruling on a motion to compel,

> a court should consider: Sedona Principle 2 **and the proportionality limits of Rule 26(b)(1)**; how the moving party can meet its burden without the need for extensive discovery about the responding party's efforts to respond to the discovery request; and that, consistent with Principle 6, the responding party is in the best position to determine the

appropriate methods for preserving, retrieving, reviewing, and producing ESI.

*Id.* (emphasis added).

Rule 26(b)(2) also requires a court to limit discovery if it determines (1) the discovery sought is unreasonably cumulative or duplicative, (2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive; (3) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (4) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P 26(b)(2)(C); *Jabil, Inc. v. Essentium, Inc.*, No. 8:19-CV-1567-KKM-SPF, 2021 WL 2895524, at *3 (M.D. Fla. Mar. 4, 2021) (denying motion to compel ESI as not proportional and pursuant to Rule 26(b)(2)(C)).

Here, Plaintiffs have moved to compel regarding the following four issues: (1) Plaintiffs' requested *Monell* search terms; (2) Plaintiffs' request for an expanded date range of the already conducted ESI search; (3) Plaintiffs' request for ESI searches involving the individual Centurion Defendants; and (4) Plaintiffs' request to be provided un-redacted versions of already-produced ESI documents. The Court should deny Plaintiffs' motion to compel for each dispute.

**A. Plaintiffs' requested *Monell* ESI search is not proportionate to needs of the case**

Plaintiffs are demanding that Centurion run 19 searches through its e-mail archiving system from 2016 to present for unidentified custodians.[4] All these searches

---

[4] It was not until filing the motion to compel that Plaintiffs stated this search would not be limited to the 22 currently identified custodians. ECF No. 147 at 16 n.4. Without proposing custodians, Centurion cannot run the *Monell* searches even if such searches were proportional.

10

relate to a **single claim** against a **single defendant** (Centurion), out of the **24 claims** brought against **21 Defendants** in this action. Several of these requests are duplicative of searches Centurion has already conducted, albeit for a narrower timeframe. Other requests are overbroad, demanding searches for commonly used terms that are likely to return enormous amounts of false hits.

But instead of focusing on these issues, Plaintiffs spend the majority of their motion arguing that Centurion is ignoring the Court's Order regarding the scope of the *Monell* claim. ECF No. 147 at 4–6, and 9–15. That is untrue and a distraction.

The policies identified by Plaintiffs in their Amended Complaint were: (1) ignoring obvious symptoms of serious medical conditions; (2) refusing to order necessary diagnostic tests or creating a sensible treatment plan for patients; (3) prioritizing profits over care; (4) failing to ensure a continuity of care for patients; (5) failing to ensure adequate staffing; (6) refusing to provide proper treatment for difficult patients; and (7) refusing to send patients to outside facilities. ECF No. 95 at 20. The proposed *Monell* search terms are not narrowly tailored to these policies and practices.

Before turning to the proportionality analysis, though, the Centurion Defendants raise two arguments: first, Plaintiffs' argument that no *Monell* ESI search has been conducted is demonstrably false, according to their own request; and second, Plaintiffs have not demonstrated that all of their *Monell* search terms are relevant.

First, Plaintiffs' argument that the previously conducted search did not address their *Monell* claim is flawed. Plaintiffs dispute that the previously run ESI search term

11

"c. diff" was sufficient for a *Monell* search, instead arguing it goes to the non-*Monell* claims. ECF No. 147 at 12. Yet Plaintiffs propose "'c. diff' OR 'c diff' OR clostridium" as a ***Monell* search term**. *Id.* at 5. Plaintiffs cannot have it both ways. Either "c. diff"[5] is an appropriate *Monell* search term, which means Centurion is correct that its prior search included terms relevant to the *Monell* claim, or "c. diff" is not an appropriate *Monell* search term and Plaintiffs motion to compel Centurion to search for it should be denied. The same is true of the proposed *Monell* search terms "malinger! OR faked OR faking," "induc! /3 vomit!," and "(weight! OR pounds) /5 (lost OR loss OR drop!)," which are either wholly or substantially duplicative of the search Centurion already conducted.[6]

Second, Plaintiffs failed to satisfy their burden of demonstrating all the proposed *Monell* search terms are relevant to their pleaded *Monell* claim. *NCH Healthcare Sys., Inc. v. Paxerahealth Corp.*, No. 2:19-CV-632-SPC-MRM, 2021 WL 3009573, at *3 (M.D. Fla. Apr. 2, 2021) (explaining movant has initial burden of establishing relevancy of requested discovery). Specifically, the Centurion Defendants do not understand how proposed search terms 2, 7, 12, 18, and 19 (*supra* at 6) relate to Plaintiffs' seven categories of policy and practice allegations. For instance, these proposed terms would include items like "differential diagnosis," and documents that merely contain the words "nurse" and "sufficient." They would also include hits for documents that

---

[5] Centurion ran the search terms "cdiff," "diff," "clostridium," and "colitis" in their prior search of the 22 custodians' emails.

[6] Centurion already searched the named custodians' emails for the terms "faking," "vomit," "vomits," "vomited," "vomiting," and "weight." *Supra* at 4.

contain the words "interview" and "doctor." While these are just a few of the combinations for these proposed terms, it is unclear how they are relevant to Plaintiffs' *Monell* claim, and Plaintiffs have not attempted to explain their relevancy.

That leaves a handful of proposed *Monell* search terms that are overly broad and, thus, not proportionate to the needs of this case. ESI searches involve "a trade-off between precision and recall—a broad search that misses few relevant documents will usually capture a lot of irrelevant documents, while a narrower search that minimizes 'false positives' will be more likely to miss some relevant documents." *L–3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 666–67 (M.D. Fla. 2015).

Centurion is in the business of providing healthcare to inmates. Plaintiffs want Centurion to search e-mails for more than a five-year period for an unspecified group of custodians for terms like "follow up" and "following up." They seek searches for "continuity of care" and "treatment plan," both of which are commonly used terms in the healthcare industry. The requested terms would also produce hits for terms like "send to hospital" or "refer to specialist." The list literally goes on.

Even if the proposed search terms returned some documents seemingly responsive to Plaintiffs' discovery requests, they are likely to return many, many more false hits. As evidence of this, the Centurion Defendants searched for two of the terms, "diagnosis" and "healthcare," for the current custodians just from December 6, 2017 to July 31, 2018. Ex. A at ¶ 6. "Diagnosis" returned 5,128 hits, and "healthcare" returned 3,541 hits. *Id.* If we expand this from the 8-month term searched to the

proposed 41-month term, Centurion expects just those two terms to return **26,281** hits and **18,147** hits respectively.

Because the proposed terms are overly broad and likely to produce thousands if not tens of thousands of false hits, conducting the search would also be unduly burdensome. Centurion does not have the ability to run Boolean searches in its archived emails. ECF No. 149-1 at ¶ 3. Instead, it would first have to run a search for each term listed in Plaintiffs' *Monell* search terms through Barracuda for each custodian for the requested date range, upload those results to Relativity, and then conduct the Boolean search in Relativity. *Id.* at ¶ 3–4, 10. Capturing and uploading the amount of data the proposed *Monell* search terms would produce would be an extremely expensive undertaking, even before considering the hours that would have to be expended reviewing the hits for relevancy, responsiveness, confidentiality, and privilege. Conducting the search of the overly broad search terms would create an undue burden on the Centurion Defendants.[7] *Aron Sec. Inc. v. ADT LLC*, No. 19-CV-80420, 2020 WL 4464699, at *2 (S.D. Fla. Mar. 13, 2020) (concluding search terms that were not narrowly tailored were overly burdensome).

For all these reasons, Plaintiffs' demand that Centurion run additional proposed *Monell* searches is not proportionate to the needs of the case. And to the extent not already addressed, the Centurion Defendants address the non-exclusive proportionality factors set forth in Rule 26(b)(1) briefly below:

---

[7] Plaintiffs' argument that Centurion should have suggested alternative terms but did not is inaccurate. Centurion told Plaintiffs the prior search included terms for their *Monell* claim; Plaintiffs just disagree.

14

- **The importance of the issues at stake in the action:** This case lacks the importance of other cases that might warrant such extensive e-discovery. This case involves the alleged violation of the constitutional rights of a single individual; it is not a class action. It is not novel, and neither party is advocating for changes in existing law. As such, this factor does not weigh in favor of the requests being proportional.

- **The amount in controversy:** Despite the time having passed for Plaintiffs to quantify damages, they have not done so. Since Plaintiffs have not quantified their damages, the Court should assume that this factor, too, does not weigh in favor of the requested search being proportionate.

- **The parties' relative access to relevant information:** Extensive discovery has already been taken in this case via other means such that if evidence of a widespread practice exists—which it does not—then Plaintiffs should already have relevant information to support their claim or propose a narrower ESI search.

- **The parties' resources**: The Centurion Defendants have no knowledge as to Plaintiffs' resources, but Plaintiffs have not offered to share in the cost of e-discovery.

- **The importance of the discovery in resolving the issues:** Plaintiffs have conducted written discovery that encompass the *Monell* issue with both the Centurion Defendants and co-Defendants. They can depose the Centurion Defendants and co-Defendants regarding the issue. They have access to FDC policies and procedures. It is unclear what information weighing on the issue of *Monell* liability would be returned if the requested search is conducted, and Plaintiffs have not identified what

15

information they believe might exist. As such, this factor does not weigh in favor of the request being proportional.

- **Whether the burden or expense of the proposed discovery outweighs its likely benefit:** This factor is explored at length above and does not weigh in favor of the requested search being proportionate.

## B. Expanded Date Range of ESI Search

Centurion ran the agreed upon search terms for the agreed upon custodians for a date range of **December 6, 2017 to July 31, 2018**. This date range included the entire time that Curtis Dettmann was at RMC (the only time during which an applicable policy or practice would be relevant), through the time period of the bi-annual review of mortalities that would have included deaths which occurred in January 2018. That search returned more than **11,000 documents** and required more than **280 hours** for work related to e-discovery, over 200 of which was for document review for relevancy, responsiveness, confidentiality, and privilege. This does not include the proposed, Plaintiffs described *Monell* search terms, which Centurion has not run.

Plaintiffs now seek to expand the date range for the same search to the present. Extrapolating the number of hits returned for just an 8-month period to the 41-month period Plaintiffs are requesting would return an estimated **56,000 documents** ((11,000 documents/8 months) x 41 months). Assuming the same rate of review and other work that goes into a document production, that would take more than **1,000 hours** at a cost of more than **$325,000**. Again, this does not include the proposed *Monell* search terms.

16

For the same reasons argued above, the request to expand the search's date range is not proportionate to the needs of this case. As the production of the currently reviewed ESI search has demonstrated, even the agreed upon search terms return a high number of false positive, irrelevant hits. Of more than 9,000 *documents* that have been reviewed, fewer than 1,000 *pages* have been relevant and responsive to Plaintiff's discovery requests—that is below a 10% positive hit rate. Even if a few relevant documents exist in the expanded date range, the time and expenses necessary to find those documents is disproportionate to the needs of this case.

Accordingly, the Court should conclude that Plaintiffs' request to expand the date range to the present is overly broad, unduly burdensome, and disproportionate to the needs of this case. Therefore, it should deny the motion to compel.

## C. Searches of Individual Centurion Defendants' Personal ESI

Plaintiffs also seek to have Centurion's counsel run searches of all the individual Centurion Defendants' personal e-mails, text messaging apps, and social media accounts for unspecified search terms. This argument, too, is flawed.

First, without specifying the specific terms sought to be searched, Plaintiffs have not met their burden of showing such a search would be relevant.

Second, Plaintiffs argue expecting the individual Centurion Defendants to conduct the search is unreasonable because doing so would "tax any layperson's ability to follow an instruction to find 'relevant'" ESI. ECF No. 147 at 19. Yet they claim that the "search for a handful of keywords would take a matter of seconds" given word-search features in most e-mail and text message systems. *Id.* This is

17

contradictory—either the search is so easy counsel need not conduct it, or it is complicated and likely to require more than a matter of seconds.

Third, and most importantly, the individual Centurion Defendants have no responsive information. Centurion does not permit persons who work with it to use personal devices for work-related purposes due to HIPAA concerns. And most of the individual Centurion Defendants have already provided sworn interrogatories that they have not made social media posts, sent text messages, or e-mailed from a personal e-mail account about anything related to this case. The other individual Centurion Defendants will provide supplemental discovery responses to indicate whether they have made social media posts, sent text messages, or e-mailed from personal e-mail accounts regrading Curtis Dettmann or the allegations or events described in Plaintiffs' second amended complaint. And those defendants agree to produce responsive communications that exist.

## D. Request for Un-Redacted ESI Production

Lastly, Plaintiffs seek to compel Centurion to produce unredacted ESI results, which would reveal protected health information ("PHI") and personal identifying information ("PII") of thousands of patients who are not parties to this action. For months, the only justification Plaintiffs provided Centurion for why unredacted ESI results should be produced is simply that there is a HIPAA protective order in place that permits the production of non-parties PHI.  Recently, Plaintiffs also claimed that the unredacted PHI and PII are needed because it may show the names of potential

"eyewitnesses" who interacted with Curtis Dettmann[8] or will show widespread practices of lack of care.  In response, Centurion asked Plaintiffs to identify which of the 31 redacted documents (of the hundreds produced) they believe might contain the names of these potential witnesses so those documents could be reviewed and potentially unredacted versions of those ESI documents could be produced. Plaintiffs declined to do so, instead taking an all-or-nothing approach to resolving this dispute.

Centurion is doing what it believes is necessary to protect the PHI and PII of non-parties who have no relevant information related to this case. Some examples of documents containing redacted PHI and PII include the medical records and autopsies of other inmates, which just happen to be attached to emails forwarding like information related to Mr. Dettmann; and bed assignments of all patients housed in the hospital on a particular date, including patients housed on different floors from Mr. Dettmann, with the reason for hospitalization. That a qualified HIPAA Order is in place does not expand the scope of discovery under Rule 26(b)(1), and Plaintiffs have offered no reason why the private information of non-parties should be disclosed when Centurion—at its own cost—has undertaken to protect it.

## **CONCLUSION**

The Court should deny Plaintiffs' motion. Under the guise of conducting *Monell* discovery, Plaintiffs are demanding the use of overly broad terms that amount to nothing more than a fishing expedition. And the demand comes at great cost to the

---

[8] This justification was not provided until the last meet-and-confer teleconference on July 29, 2021.

Centurion Defendants, who have already expended nearly $100,000 conducting e-discovery, in addition to extensive non-electronic discovery. Plaintiffs' demands are not proportionate to the needs of this case, and their motion should be denied.

/s/ Brian A. Wahl
Brian A. Wahl (FBN 95777)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place-1819 5th Avenue N.
Birmingham, AL 35203
Tel: (205) 521-8800
bwahl@bradley.com

R. Craig Mayfield (FBN 429643)
Jacob Hanson (FBN 91453)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
cmayfield@bradley.com
jhanson@bradley.com

Molly M. Walker (MSB 100689)
J. William Manuel (MSB 9891)
*Admitted Pro Hac Vice*
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 1000
Jackson, MS 39215-1789
Telephone: (601) 948-8000
mmwalker@bradley.com
wmanuel@bradley.com

*Counsel for Defendants Centurion of Florida, LLC; Rakesh Sharma; Marinette Gonzalez Morales; David Rodriguez; Gerardo Pedroza; Tanesha Adkins; Elizabeth Morton; Clarissa Moody; Priscilla Roberts; Tamara Taylor; Alex Renelus; and Kayla McCarter*