IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SARAH MCCRIMMON and CARON
DETTMANN, as Co-Administrators of
the Estate of Curtis Dettmann,

    Plaintiffs,

v.                                                   Case No.: 3:20-cv-00036-BJD-JRK

CENTURION OF FLORIDA, LLC, et al.

    Defendants.
_____/

**CENTURION DEFENDANTS'** ***EMERGENCY*** **MOTION FOR STAY,
DISCOVERY, AND PROTECTIVE ORDER**

Pursuant to Local Rule 3.01(e), Defendants Centurion of Florida, LLC ("Centurion"); Rakesh Sharma; Marinette Gonzalez Morales; David Rodriguez; Gerardo Pedroza; Tanesha Adkins; Elizabeth Morton; Clarissa Moody; Priscilla Roberts; Tamara Taylor; Alex Renelus; Kayla McCarter; and Stacy Cooper (collectively, the "Centurion Defendants") seek emergency relief to address the disclosure of confidential attorney work product to Plaintiff Sarah McCrimmon.

**INTRODUCTION**

In preparation for trial, the Centurion Defendants retained a jury consulting firm to conduct a mock trial and focus group on December 15, 2021. Sometime after the mock trial was completed, a person who served as a mock juror—in breach of his confidentiality and non-disclosure agreement—contacted Plaintiff Sarah McCrimmon

1

and divulged confidential work product to her. Ms. McCrimmon informed her counsel, Sarah Grady, who informed the Centurion Defendants' counsel of the breach on Friday afternoon, December 17, 2021. To investigate and contain this disclosure of work product, the Centurion Defendants seek (1) a temporary stay of proceedings, (2) permission to conduct discovery to determine the extent of the disclosure and harm to the Centurion Defendants, and (3) a protective order prohibiting any further disclosure of attorney work product.

The Centurion Defendants request a ruling by **December 31, 2021** to ensure that their work product is protected from further dissemination and to prevent further harm to their ability to have a fair trial.

## BACKGROUND

The Centurion Defendants, as part of their trial preparation, retained Magna Legal Services ("Magna"), a national litigation and jury consulting firm, to assist defense counsel with conducting a mock trial on December 15, 2021. As part of the mock trial and focus group, Magna retained mock jurors, all of whom signed non-disclosure agreements. Speaking vaguely due to the highly confidential nature of the information involved, the Centurion Defendants used the exercise to test defense strategies, analyze factual disputes, and obtain information from multiple mock jury panels regarding different categories of damages pursued by Plaintiffs.[1]

---

[1] The Centurion Defendants have also requested a hearing on these motions, portions of which could be conducted in camera or under seal if the Court needs additional information regarding the nature and significance of the work product that was disclosed.

Within a few hours after the mock trial had concluded—and after being reminded multiple times of the highly confidential nature of the information and the non-disclosure agreement—a juror contacted Plaintiff Sarah McCrimmon via Facebook and, after an exchange on that platform, divulged confidential work product to Ms. McCrimmon in a telephone call. Ms. McCrimmon informed her counsel, Ms. Grady, and Ms. Grady, in turn, informed the Centurion Defendants' counsel about the disclosure on the afternoon of December 17, 2021. According to the information provided by Ms. Grady, the disclosures made to Ms. McCrimmon—and conveyed by her to Ms. Grady—included highly confidential information regarding the Centurion Defendants' trial strategies and the mock jury deliberations of one panel.

The Centurion Defendants immediately requested Ms. McCrimmon maintain any information identifying the offending juror and requested such information be provided to defense counsel. The Centurion Defendants also contacted Magna and requested that it to send cease and desist letters to all jurors to ensure that no further disclosures were made. On December 20, 2021, Ms. Grady provided information identifying the juror who contacted Ms. McCrimmon and disclosed the confidential information. On December 21, Magna sent a letter directing the juror to cease and desist disseminating the Centurion Defendants' confidential work product. The juror responded, acknowledging the cease-and-desist letter and confirming that he had communicated with Ms. McCrimmon in breach of his non-disclosure agreement.

The Centurion Defendants have not yet been able to determine the extent of the mock juror's disclosure to Ms. McCrimmon, nor Ms. McCrimmon's disclosure of

3

work product to her counsel. The Centurion Defendants seek a temporary, 90-day stay of these proceedings so that they can conduct discovery—both written discovery and depositions of Ms. McCrimmon, Ms. Grady, the disclosing juror, and any other person with relevant information—to determine what the extent of the disclosure and identify the remedies available to address this potentially catastrophic disclosure of their defense strategy to Plaintiffs' counsel. The Centurion Defendants also seek a protective order directing any party or attorney who received the confidential information to not disseminate it to anyone else.

## ARGUMENT

Attorney work product, both tangible and intangible, is afforded the utmost protection in our civil justice system because its disclosure can be devastating to a party's ability to obtain a fair trial. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *see also* Fed. R. Civ. P. 26(b)(3). Indeed, the work product doctrine "exists so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories." *Minnesota Sch. Boards Ass'n Ins. Tr. v. Emps. Ins. Co. of Wausau*, 183 F.R.D. 627, 630 (N.D. Ill. 1999).

The Centurion Defendants' core work product—the mental impressions and trial strategies of their counsel—have been disclosed by a mock juror, and immediate action is necessary to investigate and remedy that disclosure. A stay of proceedings is necessary so that the Centurion Defendants may investigate the disclosure of this most sensitive and protected form of attorney work product. This Court has the inherent authority to stay cases, and the decision to issue a stay is "'generally left to the sound

4

discretion of district courts.'" *Connor v. Sec'y, Fla. Dep't of Corr.*, 713 F.3d 609, 619 (11th Cir. 2013) (quoting *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013)).

There is no question that the information disclosed—the Centurion Defendants' trial strategies—constitutes attorney work product that is confidential and protected. *Stevens v. United States*, No. 03-81110-CIV-HURLEY, 2011 WL 13173610, at *2 (S.D. Fla. July 25, 2011) (explaining "trial strategy is not appropriate topic for discovery" and citing work product privilege). As federal courts recognize, "the work product doctrine as a fundamental and essential component of litigation in our adversary system" that, "[a]t its core, protects against revealing an attorney's or a client's trial strategies and supportive documentation prepared in anticipation of litigation against a litigation opponent." *Ahern v. Pac. Gulf Marine, Inc.*, No. 8:06-CV-2068-T-27MSS, 2007 WL 9723901, at *2 (M.D. Fla. Nov. 8, 2007) (citing *Hickman*, 329 U.S. at 495). "By maintaining privacy in the development of legal theories, opinions, and strategies, the doctrine fosters the effectiveness of legal assistance upon which our adversarial system of justice depends." *Id.*

Fundamental fair trial principles require that the parties and Court take action to rectify this potentially devastating disclosure of confidential work product by the mock juror to Ms. McCrimmon and, subsequently, to Ms. Grady and possibly others in Ms. Grady's firm. As explained below, the Court should stay this case to permit the Centurion Defendants to conduct limited discovery into the nature of the disclosure so that they can seek an appropriate remedy. The Court should also enter a protective order prohibiting both Ms. McCrimmon and Ms. Grady—as well as any other parties

5

or counsel to whom such confidential information has been disclosed—from further disseminating the protected information.

## I. The Centurion Defendants did not waive their work product protections.

As a threshold issue, the Centurion Defendants did not waive confidentiality of the information disclosed to Plaintiff and her counsel. The Centurion Defendants have not found any caselaw addressing this exact scenario, where confidential work product is disclosed by a mock juror who has expressly agreed—as a condition of participating in the mock trial and receiving the information—to maintain its confidentiality.[2] The general rule, however, is that inadvertent disclosures like this do not waive a party's all-important work product protections.

For inadvertent disclosures, courts in this Circuit employ a totality of the circumstances test, focusing on the following factors: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Koch Foods of Alabama, LLC v. Gen. Elec. Cap. Corp.*, 303 F. App'x 841, 846 (11th Cir. 2008) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993)). These factors confirm that the Centurion Defendants did not waive work-product protection for the trial-strategy information divulged by the mock juror.

---

[2] Of course, the work product protection extends to consultants retained by counsel to assist with trial preparation and trial strategy are also subject to the work product protection. *See* Fed. R. Civ. P. 26(b)(3)(A)-(B); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003) (recognizing that litigation and jury consultants are protected by the work product doctrine).

The Centurion Defendants took reasonable precautions to prevent disclosure by retaining Magna, a national jury consulting firm with significant experience conducting mock trials and focus groups to aid trial counsel. Magna, of course, required all jurors to sign non-disclosure agreements, and Magna's consultants reinforced the highly sensitive nature of the information presented during the mock trial and reminded jurors of their non-disclosure promises and obligations multiple times during the exercise.

The Centurion Defendants acted promptly upon learning of the disclosures on December 17, 2021, having Magna send cease-and-desist letters to all jurors, and asking Plaintiffs' counsel to preserve and sequester any information relating to the disclosure. The information disclosed was not within the scope of discovery—it was confidential, attorney work-product related to core trial and defense strategies.

The disclosure of such highly sensitive, trial-strategy information to Ms. McCrimmon and Ms. Grady (and potentially others) jeopardizes the Centurion Defendants' ability to have a fair trial. Because the Centurion Defendants have been unable to determine the extent of the disclosures, discovery is necessary.

II.   **The Court should allow discovery so that the Centurion Defendants can determine the true nature and extent of the work product disclosures.**

The Centurion Defendants must be permitted to discover the extent of work product that was disclosed to the Plaintiff and her counsel, so that the parties and the Court can assess the prejudice caused by the disclosure and determine the appropriate remedy to preserve the Centurion Defendants' right to a fair trial.

The mock juror's disclosure of the Centurion Defendants' trial strategies to the Plaintiff is far more prejudicial than a typical inadvertent disclosure of, for example, a privileged email communication or letter that can be quickly destroyed or returned. Cases addressing such disclosures—where an unfair strategic advantage is obtained by party's or counsel's receipt of core trial strategy information—explain that the only viable remedy may be the disqualification of the receiving party's counsel. *E.g.*, *Walker v. GEICO Indem. Co.*, No. 6:15-CV-1002-ORL-41-KRS, 2017 WL 1174234, at *10–11 (M.D. Fla. Mar. 30, 2017) ("Although disqualification is a drastic remedy, it is necessary in certain circumstances where there has been an inadvertent disclosure."); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV-UNGARO, 2009 WL 982456, at *5 (S.D. Fla. Apr. 10, 2009) (same); *Gibson v. Health Mgmt. Assocs., Inc.*, No. 605CV1599ORL28KRS, 2007 WL 9723120, at *6 (M.D. Fla. Jan. 3, 2007) ("Courts in Florida have held that disqualification of counsel who gained an unfair tactical advantage by virtue of inadvertent disclosure of privileged documents may be warranted."). "The receipt of an inadvertent disclosure warrants disqualification when the movant establishes that: (1) the inadvertently disclosed information is protected, either by privilege or confidentiality; and (2) there is a 'possibility' that the receiving party has obtained an 'unfair' 'informational advantage' as a result of the inadvertent disclosure." *Walker*, 2017 WL 1174234 at *10 (citing *Moriber v. Dreiling*, 95 So. 3d 449, 454 (Fla. Dist. Ct. App. 2012)).[3]

---

[3] To be clear, though, the Centurion Defendants are not aware of any ethical violations by Ms. Grady or her firm and are not accusing Ms. Grady or her firm of any ethical violations.

Because disqualification is a drastic remedy, "[t]he party moving to disqualify counsel bears the burden of proving grounds for disqualification." *Id.*; *accord Cox v. WorldPay US, Inc.*, No. 8:13-CV-668-T-35TBM, 2013 WL 12309384, at *3 (M.D. Fla. Dec. 12, 2013) (citing *In re BellSouth Corp.*, 334 F. 3d 941, 961 (11th Cir. 2003)). As such, the Centurion Defendants must be allowed to conduct discovery to learn what information was divulged and to whom, so that they can determine if the disclosure warrants disqualification as a remedy.

District courts have broad discretion to permit and manage pretrial discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). In cases like this, involving inadvertent work product disclosures, courts have discretion to permit depositions of opposing counsel. "Because the movant bears the burden of proof on a disqualification motion, courts have permitted movant's counsel to depose opposing counsel and they have permitted the receiving attorneys to provide sworn statements explaining the extent to which the privileged and protected information was reviewed, copied and disseminated." *Walker v. GEICO Indem. Co.*, No. 615CV1002ORL41KRS, 2016 WL 11578804, at *1 (M.D. Fla. July 12, 2016).

This is precisely the sort of discovery the Centurion Defendants need so they can determine what remedies are needed to rectify the disclosure of work product to Ms. McCrimmon, Ms. McCrimmon's disclosure to Ms. Grady and potentially to other persons. Specifically, the Centurion Defendants request leave to serve written discovery on Plaintiffs and to depose Ms. McCrimmon, Ms. Grady, and the disclosing mock juror. If those depositions lead to discovery that other persons or counsel have

also received the information, the Centurion Defendants may seek permission to depose others as well. Lastly, the Centurion Defendants will seek production of all written or recorded communications related to the disclosures so it can corroborate what information was disclosed.

The Centurion Defendants believe a stay of 90 days is necessary to allow for this targeted discovery and, at the same time, ensure that the juror's disclosures do not unfairly impact the course of this litigation.

### III. The Court should immediately enter a protective order to prevent further dissemination of the Centurion Defendants' work product.

Lastly, the Centurion Defendants request a protective order preventing further disclosure or use of their confidential work product. Federal Rule of Civil Procedure 26 allows the Court to enter a protective order, upon a showing of good cause. Fed. R. Civ. P. 26(c)(1). Courts may also enter protective orders to address disclosure of privileged information or work product. *Cf. Koch Foods*, 303 F. App'x at 846 (holding court did not abuse discretion by issuing protective order regarding inadvertently disclosed e-mail protected by attorney-client privilege); *Peterson v. PNC Bank, N.A.*, No. 6:18-CV-84-ORL-31DCI, 2019 WL 2022446, at *2 (M.D. Fla. May 8, 2019) (noting protective order had been entered regarding inadvertently disclosed documents).

For the reasons already explained, a protective order is needed to protect the attorney work product disclosed to Ms. McCrimmon, Ms. Grady, and maybe others from being further used or disseminated. That information, including the Centurion Defendants' trial strategies, is highly confidential. While ethical rules prohibit Ms.

10

Grady from disseminating such information, no rules prohibit Ms. McCrimmon from continuing to share the information. As such, a protective order is needed to prevent any party or attorney in this action from further disseminating the Centurion Defendants' protected attorney work product.

## CONCLUSION

The Centurion Defendants have demonstrated ample cause for the requested relief—a stay, discovery, and a protective order—in light of the disclosure of their of highly confidential and protected work product.

The Centurion Defendants request the Court grant this motion and: (1) stay this case until further order; (2) permit the Centurion Defendants to conduct discovery into the disclosure, including by deposing Ms. McCrimmon, Ms. Grady, the mock juror, and anyone else to whom the protected information was disclosed; and (3) enter a protective order preventing any parties or counsel in this action from disclosing any of the improperly disseminated information.

Respectfully submitted: December 23, 2021.

/s/ Brian A. Wahl
Brian A. Wahl (FBN 95777)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place-1819 5th Avenue N.
Birmingham, AL 35203
Tel: (205) 521-8800
bwahl@bradley.com

        R. Craig Mayfield (FBN 429643)
        Jacob Hanson (FBN 91453)
        BRADLEY ARANT BOULT CUMMINGS LLP
        100 North Tampa Street, Suite 2200
        Tampa, Florida 33602
        Tel: (813) 559-5500
        cmayfield@bradley.com
        jhanson@bradley.com

        Molly M. Walker (MSB 100689)
        James William Manuel (MSB 9891)
        ***Admitted Pro Hac Vice***
        Bradley Arant Boult Cummings LLP
        One Jackson Place
        188 East Capitol Street, Suite 1000
        Post Office Box 1789
        Jackson, MS 39215-1789
        Telephone: (601) 948-8000
        Facsimile: (601) 948-3000
        mmwalker@bradley.com
        wmanuel@bradley.com

        ***Counsel for Defendants Centurion of Florida, LLC; Rakesh Sharma; Marinette Gonzalez Morales; David Rodriguez; Gerardo Pedroza; Tanesha Adkins; Elizabeth Morton; Clarissa Moody; Priscilla Roberts; Tamara Taylor; Alex Renelus; Kayla McCarter; and Stacy Cooper***

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that he conferred with Plaintiffs' counsel regarding the relief sought in this motion via telephone on December 21 and December 22, 2021. Plaintiffs oppose the relief sought at this time.

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Brian A. Wahl*
**Counsel for Defendants Centurion of Florida, LLC; Rakesh Sharma; Marinette Gonzalez Morales; David Rodriguez; Gerardo Pedroza; Tanesha Adkins; Elizabeth Morton; Clarissa Moody; Priscilla Roberts; Tamara Taylor; Alex Renelus; Kayla McCarter; and Stacy Cooper**