UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SARAH MCCRIMMON and CARON
DETTMANN, as Co-Administrators
of the Estate of Curtis Dettmann,

          Plaintiffs,

v.                                 Case No. 3:20-cv-36-BJD-LLL

CENTURION OF FLORIDA, LLC,
et al.,

          Defendants.

_____

## ORDER

### I. Status

This cause is before the Court on the following motions: (1) Plaintiffs' motion to strike and/or motion to compel (Doc. 132; Motion to Strike or Compel), which the Centurion Defendants oppose (Doc. 136; Motion to Strike or Compel Resp.); (2) Centurion's motion to confess judgment and pay funds into the Court registry (Doc. 139; Motion to Confess), which Plaintiffs oppose (Doc. 146; Motion to Confess Resp.); (3) Plaintiffs' second motion to compel discovery (Doc. 147; Second Motion to Compel), which the Centurion Defendants oppose (Doc. 150; Second Motion to Compel Resp.); (4) the Centurion Defendants' motion for protective order (Doc. 149; Motion for Prot.

Order), which Plaintiffs oppose (Doc. 151; Motion for Prot. Order Resp.); (5) Centurion's motion to quash and motion for protective order (Doc. 155; Motion to Quash), which Plaintiffs oppose (Doc. 156; Motion to Quash Resp.); (6) Plaintiffs' third motion to compel discovery (Doc. 171; Third Motion to Compel), which Centurion opposes (Doc. 175; Third Motion to Compel Resp.); (7) Plaintiffs' fourth motion to compel (Doc. 172; Fourth Motion to Compel), which Centurion opposes (Doc. 176; Fourth Motion to Compel Resp.); and (8) the Centurion Defendants' motion to strike Plaintiffs' reply (Doc. 188; Motion to Strike), which Plaintiffs oppose (Doc. 192; Motion to Strike Resp.).

## II. Background

Plaintiffs, co-administrators of Curtis Dettmann's estate, are proceeding on a second amended complaint (Doc. 123; Am. Compl.) against Centurion and individual Centurion healthcare providers (collectively, "the Centurion Defendants"), among others. See Am. Compl. ¶¶ 6-14. Plaintiffs' claims arise out of medical care Mr. Dettmann received or needed when he was an inmate of the Florida Department of Corrections (FDOC). Id. ¶¶ 20-21. Mr. Dettmann died on January 23, 2018, at the Reception and Medical Center (RMC). Id. ¶¶ 1, 2, 6. He died from pseudomembranous colitis, caused by an infection called Clostridium difficile ("c. diff."). Id. ¶ 1.

Mr. Dettmann was housed at RMC because he had serious medical

needs, including hidradenitis, a chronic skin condition. Id. ¶ 22. On January 10, 2018, Mr. Dettmann had surgery at Memorial Hospital Jacksonville to resolve an outbreak near his anus. Id. ¶ 23. He returned to RMC two days later with various medications, including a course of antibiotics, which RMC medical providers administered. Id. ¶¶ 24, 25.

Plaintiffs allege that Mr. Dettmann's health began to deteriorate on January 17, 2018, five days after his release from the hospital. Id. ¶ 26. He became nauseous and was vomiting. Additionally, Plaintiffs allege, he showed signs of an active infection: his blood pressure, temperature, and white blood cell counts were elevated, and his lymphocyte counts were low. Id. The following day, January 18, 2018, Mr. Dettmann was unable to eat. Id. ¶ 27.

Plaintiffs allege that, despite Mr. Dettmann's obviously deteriorating condition, the doctors took no action to determine the cause and refused to send him to the hospital. Id. ¶¶ 30-34. On January 22, 2018, Defendant Gonzalez returned Mr. Dettmann to the general population even though his condition had not improved—he had lost a lot of weight, had become incontinent, and was wheelchair-bound. Id. ¶¶ 33-39, 47. Mr. Dettmann was found unresponsive in his cell the following day. Id. ¶ 52.

As relevant to the motions before the Court, Plaintiffs allege Centurion was deliberately indifferent to Mr. Dettmann's serious medical needs by

3

"maintain[ing] policies and practices pursuant to which prisoners . . . with serious medical needs were routinely denied medical care," which were the proximate cause of Mr. Dettmann's injuries. Id. ¶¶ 66-69. Specifically, Plaintiffs allege the following Centurion policies or practices contributed to Mr. Dettmann's death: ignoring obvious symptoms of serious medical conditions; refusing to order necessary diagnostic tests or creating a sensible treatment plan for patients; prioritizing profits over care; failing to ensure a continuity of care for patients; failing to ensure adequate staffing; refusing to provide proper treatment for difficult patients; and refusing to send patients to outside facilities. Id. ¶ 68.

### III. Motion to Strike

Plaintiffs ask the Court to strike the Centurion Defendants' affirmative defenses (six in total) or, alternatively, to compel them to answer an interrogatory seeking the factual basis supporting each affirmative defense. See Motion to Strike or Compel at 1, 3, 9. Plaintiffs assert the Centurion Defendants' affirmative defenses are stated in a "shotgun" manner and do not give Plaintiffs "fair notice" of the factual contentions supporting each. Id. at 5. Plaintiffs attempted to seek "the entire factual basis supporting each [affirmative] defense" through an interrogatory (Doc. 132-1), but the Centurion

4

Defendants objected, asserting the interrogatory was premature and invoking privileges. Id. See also Doc. 132-1 ¶ 6.

In response, the Centurion Defendants note Plaintiffs' counsel did not attempt to confer with opposing counsel in good faith before filing the motion. See Motion to Strike or Compel Resp. at 1, 5-6. As to the merits, the Centurion Defendants say the Twombly/Iqbal pleading standard does not apply to affirmative defenses, and Plaintiffs' interrogatory constitutes an impermissible contention interrogatory, an objection the Centurion Defendants raised in their supplemental answers to Plaintiffs' interrogatories.[1] Id. at 3-4, 10-11.

The Court declines to weigh in on the split among district courts as to whether the Twombly/Iqbal pleading standard applies to affirmative defenses. Instead, the Court overrules the Centurion Defendants' objections to interrogatory number 6 and will direct them to answer it. This interrogatory fairly asks the Centurion Defendants to provide "the entire factual basis supporting each [affirmative] defense" and to "identify any witnesses or physical, documentary, or testimonial evidence that supports each such defense." Doc. 132-1 ¶ 6.

---

[1] Plaintiffs provided a copy of the Centurion Defendants' original answers to Plaintiffs' interrogatories, in which the Centurion Defendants did not object on the basis that the interrogatory was a contention interrogatory.

While contention interrogatories "should be used sparingly," they are not prohibited. Middle District Discovery (2021) at Section IV.C.2. <u>See also</u> Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or application of law to fact."). Indeed, such interrogatories may be appropriate if "designed (1) to target claims, defenses, or contentions that the propounding attorney reasonably suspects may be the proper subject of early dismissal or resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions." Middle District Discovery (2021) at Section IV.C.2.

The Centurion Defendants' affirmative defenses are vague, and some have no obvious applicability to the issues (to name a few, for example, "accord and satisfaction"; "failure of consideration"; "statute of frauds"). <u>See</u> Doc. 127 at 15. Plaintiffs' need to discover the factual basis for the Centurion Defendants' affirmative defenses is reasonable, and interrogatory number 6 is aimed at narrowing the scope of those defenses. The Centurion Defendants' objection that the interrogatory is premature is unconvincing under the circumstances. Indeed, if the Centurion Defendants have no factual basis for having asserted each affirmative defense, they may be in violation of Rule 11, which provides,

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or

unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, <u>defenses</u>, and other legal contentions are warranted by existing law . . .

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b) (emphasis added). <u>See also</u> <u>Hendricks v. Mirabilis Ventures, Inc.</u>, No. 8:07-CV-661-T-17EAJ, 2008 WL 423566, at *2 n.4 (M.D. Fla. Feb. 13, 2008) (suggesting a defendant who asserts an affirmative defense with no factual basis for doing so violates Rule 11).

The Centurion Defendants will be directed to answer interrogatory number 6 to the extent they are able and to supplement their answer if more information becomes available later.[2]

---

[2] Of course, they may withdraw any affirmative defense they deem inapplicable or factually unsupported.

To the point that Plaintiffs did not confer with defense counsel in good faith before filing the motion, the Court would be inclined to agree that the conferral does not satisfy the "good faith" standard if the sole effort to address the issue is reflected in the email exchange Plaintiffs filed with their motion (Doc. 132-2).[3] In an email dated May 4, 2021, Plaintiffs' counsel directed defense counsel to amend the Centurion Defendants' answer but did not attempt to engage counsel in a discussion to resolve the issue. Doc. 132-2 at 3. When defense counsel offered to speak about the matter, Plaintiffs' counsel apparently opted to file this motion to strike instead. Id. at 2. See also Motion to Strike or Compel Resp. at 6. Additionally, Plaintiffs' counsel did not mention in the email that Plaintiffs found the Centurion Defendants' supplemental answer to interrogatory number 6 inadequate, Doc. 132-2 at 3, which appears to violate not only the Court's Local Rule 3.01(g) but also Rule 37 of the Federal Rules of Civil Procedure.

In their motion, however, Plaintiffs represent they also attempted to confer with opposing counsel "through . . . telephone conference." See Motion to Strike or Compel at 3 n.2. Based on the information provided, the Court will not conclude Plaintiffs' counsel failed to confer with opposing counsel in good

---

[3] The Centurion Defendants contend the filing of the email exchange was inappropriate. See Motion to Strike or Compel Resp. at 1, 6. Under the circumstances, the Court declines to make such a ruling.

faith. Moreover, given the Centurion Defendants appear quite disinclined to answer interrogatory number 6, directing the parties to confer about the issue likely would serve only to delay the inevitable need for a ruling from the Court. As such, the Court will deny Plaintiffs' motion to strike but grant Plaintiffs' motion to compel an answer to interrogatory number 6.

### IV. Motion to Confess Judgment

Relevant to Centurion's motion to confess judgment, Plaintiffs allege the Centurion Defendants were deliberately indifferent to Mr. Dettmann's serious medical needs. See generally Am. Compl. Plaintiffs also allege state law claims: intentional infliction of emotional distress against the individual Defendants (count 22); respondeat superior against Centurion (count 23); and wrongful death against Centurion (count 24). Id.

As Centurion explains in its motion, "Centurion seeks to confess judgment on the wrongful death claim and deposit into the Court's Registry $300,000—the maximum damages award Plaintiffs[] can recover for the claim pursuant to § 768.28(5)(a), Florida Statutes." See Motion to Confess at 2. Centurion relies solely upon Rule 67(a) of the Federal Rules of Civil Procedure, which provides,

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with

> the court all or part of the money or thing, whether or
> not that party claims any of it.

Fed. R. Civ. P. 67(a). Centurion contends that by "confessing judgment and paying the full amount due under the statutory caps, Centurion will moot Plaintiffs' [state] claims against the individual Centurion Defendants" because under Florida's sovereign immunity statute, either individual employees or the agency for which they work may be liable, but not both. <u>See</u> Motion to Confess at 3-4.

Plaintiffs oppose the motion insofar as Centurion suggests that confessing judgment on the wrongful death claim asserted against it will thereby extinguish Plaintiffs' alternative theory of recovery against the individual Centurion healthcare providers. <u>See</u> Motion to Confess Resp. at 4-5.[4]

Centurion cites no case law, and the Court has found none, that permits the relief they seek under Rule 67(a). In fact, it appears Centurion is mis-reading the statutory text, which presupposes a "money judgment" has been entered by a court and its proper disposition is the subject of some dispute. The

---

[4] Centurion previously argued Florida's sovereign immunity statute barred the wrongful death claim against it—an argument the Court rejected in ruling on Centurion's motion to dismiss. <u>See</u> Order (Doc. 95). Centurion thereafter asked the Court to reconsider its ruling. The Court denied Centurion's motion without prejudice, noting Centurion's "agency" status was best addressed on summary judgment. <u>See</u> Order (Doc. 122).

Eleventh Circuit and others agree that "[t]he 'core purpose' of [Rule 67] is to 'relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto.'" Zelaya/Cap. Int'l Judgment, LLC v. Zelaya, 769 F.3d 1296, 1302 (11th Cir. 2014) (quoting Alstom Caribe, Inc. v. George P. Reintjes Co., 484 F.3d 106, 113 (1st Cir. 2007)). See also Fulton Dental, LLC v. Bisco, Inc., 860 F.3d 541, 545 (7th Cir. 2017) (noting Rule 67 "is just a procedural mechanism that allows a party to use the court as an escrow agent").

Rule 67 affords neutral parties a procedural mechanism to satisfy a judgment or debt without having to participate in proceedings to determine the rightful owner of the funds. Zelaya, 769 F.3d at 1302. An order under Rule 67 would be appropriate, for instance, "to allow a settling defendant to withdraw from litigation while competing claimants continue to squabble over their entitlement to the settlement proceeds," see Alstom, 484 F.3d at 114; to ensure an asset is protected pending resolution of a dispute over entitlement to that asset, see Brady v. Basic Rsch., L.L.C., 312 F.R.D. 304, 306 (E.D.N.Y. 2016); or in the case of interpleader, see New York Life Ins. Co. v. Apostolidis, 841 F. Supp. 2d 711, 719-20 (E.D.N.Y. 2012) (permitting New York Life Insurance Company to deposit a sum certain into the court's registry and

dismissing the company because it was a neutral stakeholder merely in possession of death benefits subject to competing claims).

Rule 67 is not a procedural mechanism available to Centurion under the circumstances. Centurion is not a neutral party, nor are the funds it seeks to deposit with the Court subject to competing claims. Centurion's motion, in essence, is an offer to settle, which Plaintiffs apparently reject. Regardless, Centurion may not use Rule 67 as a mechanism to force a settlement with Plaintiffs. Accordingly, Centurion's motion to confess judgment and pay funds into the Court registry is due to be denied.

## V. Discovery Disputes

The remainder of the motions before the Court relate to discovery. Rule 26 permits liberal, robust discovery. Akridge v. Alfa Mut. Ins. Co., 1 F.4th 1271, 1276 (11th Cir. 2021) (citing Hickman v. Taylor, 329 U.S. 495, 506 (1947)). As such, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The term "relevant" is broadly construed to mean "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Akridge, 1 F.4th at 1276 (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

Proportionality considerations include the following: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The benchmark for discovery is not "admissibility." Id. Parties may seek "any information . . . if it appears reasonably calculated to lead to the discovery of admissible evidence." Akridge, 1 F.4th at 1276.

## A. Plaintiffs' Second Motion to Compel & Centurion's Motion for Protective Order

Plaintiffs' second motion to compel and the Centurion Defendants' motion for protective order are counter motions regarding Plaintiffs' discovery requests for electronically stored information (ESI). Plaintiffs seek an order compelling Centurion to (1) conduct an ESI search of 19 terms related to Plaintiffs' Monell[5] claim; (2) expand the timeframe of its ESI searches; (3) search the personal ESI of the individual Centurion healthcare providers who are Defendants in this action; and (4) provide unredacted copies of certain records previously disclosed. See Second Motion to Compel at 1, 3-8.

---

[5] Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

In their response to Plaintiffs' second motion to compel and in their motion for protective order, the Centurion Defendants contend Plaintiffs' 19 proposed search terms are not proportional to the needs of the case, are not relevant to Plaintiffs' <u>Monell</u> claim, or are duplicative of terms already searched; the timeframe Plaintiffs propose is unreasonable because it would result in too many responsive documents; a search of the individual Defendants' personal ESI is fruitless because those Defendants "have no responsive information"; and Centurion properly redacted some information from already disclosed documents to "protect the PHI and PII of non-parties." <u>See</u> Second Motion to Compel Resp. at 1, 6, 11, 12, 18, 19; Motion for Prot. Order at 2.

Upon careful consideration, the Court finds Plaintiffs' second motion to compel is due to be granted in part and denied in part. The 23 terms Centurion has already searched (original 23 terms), <u>see</u> Second Motion to Compel at 4; Second Motion to Compel Resp. at 4, would not necessarily capture documents relevant to Plaintiffs' <u>Monell</u> claim, which alleges that Centurion "maintained policies and practices pursuant to which prisoners . . . with serious medical needs were routinely denied medical care and access to medical care." <u>See</u> Am. Compl. ¶ 67.

Some of the additional 19 terms Plaintiffs propose could lead to matter that could bear on Plaintiffs' <u>Monell</u> claim. However, as Centurion notes, some of the additional 19 terms Plaintiffs propose are redundant of those already searched, at least insofar as they are limited to the same timeframe and to the same custodians: for instance, numbers 9, 15, 16, and 17. <u>See</u> Second Motion to Compel Resp. at 7-8. Additionally, some of the proposed terms may be so ubiquitous in Centurion's electronic records that they may yield far too many results, making any such searches unduly burdensome: numbers 3, 10, and 11, for example.[6] <u>See</u> Second Motion to Compel at 5.

However, Centurion refused to propose alternative search terms, countering instead that the original 23 terms sufficiently covered Plaintiffs' <u>Monell</u> claim, and Centurion disclosed its written policies. <u>See</u> Second Motion to Compel Resp. at 11-12, 14 n.7, 15. Centurion's suggestion that it satisfied its discovery obligation by disclosing its written policies is disingenuous given Plaintiffs are proceeding on a theory that Centurion was deliberately indifferent to a widespread history of abuse, a theory Centurion acknowledges "requires demonstrating more than a single instance of a violation." <u>See</u> Motion

---

[6] Centurion explains in its response that it ran test searches of some of the terms Plaintiffs proposed, and the projected number of responses they describe suggest the proposed terms are not sufficiently narrowed. <u>See</u> Second Motion to Compel Resp. at 7-8. <u>See also</u> Motion for Protective Order at 9.

for Prot. Order at 13 (quoting with alteration <u>McDowell v. Brown</u>, 392 F.3d 1283, 1290 (11th Cir. 2004) ("'Because a [governmental entity] rarely will have an officially-adopted policy of permitting a particular constitutional violation,' most plaintiffs must show the existence of a custom or practice permitting the alleged constitution violation.")).

The Court is not best positioned to identify appropriate search terms for the parties, nor should the Court do the attorneys' work. Accordingly, the Court will direct Centurion to propose a list of alternative terms related to Plaintiffs' <u>Monell</u> claim. The parties are best positioned to reach a compromise on a reasonable list of additional search terms specifically targeted to Plaintiffs' <u>Monell</u> claim and within the search capabilities of Centurion's databases to yield relevant documents.

If Centurion refuses to participate in a good-faith discussion designed to reach a compromise with Plaintiffs regarding <u>Monell</u>-specific ESI search terms, the Court will entertain a renewed motion on this discovery dispute. The Court takes this opportunity to stress it expects the attorneys to satisfy their professional and ethical obligations as officers of the Court to engage in meaningful, problem-solving-focused discussion about this and any future discovery matters before involving the Court. The parties are reminded of their duty to work with a spirit of civility and cooperation in reducing any

16

unnecessary burden and cost of conducting discovery. <u>Akridge</u>, 1 F.4th 1271 at 1276 ("The discovery process depends on the parties participating in good faith.").

With respect to a timeframe, Centurion already searched the original 23 terms from December 6, 2017, through July 31, 2018.[7] <u>See</u> Second Motion to Compel Resp. at 16. <u>See also</u> Second Motion to Compel at 7. Centurion explains this "date range include[s] the entire time that Curtis Dettmann was at RMC . . . through the time period of the bi-annual review of mortalities that would have included deaths which occurred in January 2018." <u>See</u> Second Motion to Compel Resp. at 16.

Plaintiffs seek an order directing Centurion to search the original 23 terms "through the present," which would have been the date of the motion, August 6, 2021, and to search the additional <u>Monell</u> terms from January 2016—when Centurion began providing healthcare services for the FDOC— through the date of the motion. <u>See</u> Second Motion to Compel at 7. Given Plaintiffs' deliberate indifference claims involve Defendants' actions or omissions leading up to Mr. Dettmann's death, the timeframe Centurion proposes and already searched—at least for the original 23 terms—appears reasonable as to those claims.

---

[7] Mr. Dettmann died on January 23, 2018. <u>See</u> Am. Compl. ¶ 1.

With respect to the <u>Monell</u> claim, however, seeking discovery of relevant information from the date Centurion began providing healthcare services for the FDOC through the date Plaintiffs filed the motion is reasonable. As Plaintiffs explain, "It is reasonable to expect that once the lawsuit was filed … some of the people implicated in Mr. Dettmann's care might have communicated about it." <u>See</u> Second Motion to Compel at 17. Additionally, to the extent Centurion reviewed or altered its practices or policies after Mr. Dettmann's death, such evidence could lead to matter that could bear on the issue of whether an unconstitutional practice or policy existed prior to Mr. Dettmann's death. If the parties reach a compromise on appropriate search terms for the <u>Monell</u> claim, the timeframe for such search terms shall be from January 1, 2016, through August 6, 2021.

As to the request to compel the individual Centurion Defendants to conduct ESI searches of their personal email accounts, text messages, and social media, Centurion's counsel represents the individual Centurion Defendants have "provided sworn interrogatories that they have not made social media posts, sent text messages, or e-mailed from a personal e-mail account about anything related to this case." <u>See</u> Second Motion to Compel Resp. at 18.[8] Accordingly, this request will be denied.

_____

[8] In its motion for protective order, Centurion represents "the other individual Centurion Defendants will provide supplement[al] discovery responses to indicate

18

However, Plaintiffs' request for unredacted versions of documents already disclosed is reasonable given the parties are bound by a HIPAA qualified protective order (Doc. 81). As such, the Court will order Centurion to produce unredacted versions of the documents it previously disclosed to Plaintiffs with third-party PHI redacted.[9] In light of the Court's ruling on Plaintiffs' second motion to compel, the Court will deny as moot the Centurion Defendants' motion for protective order.

## B. Third Motion to Compel

In their third motion to compel, Plaintiffs seek an order directing the Centurion Defendants to respond to their second set of interrogatories and second request for production of documents (RFP).[10] <u>See</u> Third Motion to Compel at 1, 5. Plaintiffs explain, "This discovery seeks documents and information pertaining to [c. diff.] infections suffered by other patients at . . . [RMC]." <u>Id.</u>

---

whether they have made social media posts, sent text messages, or e-mailed from personal e-mail accounts . . . . [and] agree to produce communications that exist." <u>See</u> Motion for Prot. Order at 22. The parties do not dispute that Centurion employees' work email accounts are within the ESI protocol.

[9] Of course, Centurion should redact information as required by the Federal Rules of Civil Procedure.

[10] The second set of interrogatories includes only one request, which correlates with RFP number three.

### i.      Interrogatory & RFP Numbers Two, Three, and Four

The interrogatory asks Centurion to "identify every [c. diff.] case at RMC between January 1, 2015 and January 30, 2018," along with inmate names, information about diagnosis and treatment, and medical personnel involved. Doc. 171-5 at 2. As a corollary, RFP number three seeks medical records of those inmates identified in response to the interrogatory. Doc. 171-6 at 5. In RFP number two, Plaintiffs request documents "sufficient to show [information, as listed] with respect to each case of [c. diff.] at RMC between January 1, 2015 and January 30, 2018." Doc. 171-6 at 4. And, in RFP number four, Plaintiffs request all documents (including medical records) of c. diff. infections between January 1, 2015,[11] and December 31, 2018. Id. at 5.

Centurion objects on the grounds of relevance, HIPAA, proportionality, undue burden, and because some of the information sought is "not in its custody or control." Doc. 171-5 at 2-3; Doc. 171-6 at 4-5.

The Court overrules Centurion's objections.[12] Information related to c. diff. infections suffered by other inmates and the treatment or lack thereof

---

[11] It is unclear why Plaintiffs use January 1, 2015, as the start date in these requests, given they acknowledge that Centurion "started to provide healthcare at FD[O]C in January 2016." See Second Motion to Compel at 7. This may be a typographical error.

[12] The HIPAA objection is overruled for the reason stated previously in this Order.

provided to those inmates are relevant to Plaintiffs' claims for the reasons Plaintiffs articulate in their motion. See Third Motion to Compel at 3-4, 6-8. Indeed, Centurion acknowledges "c. diff." is a relevant search term, see Third Motion to Compel Resp. at 9; Second Motion to Compel Resp. at 4, and concedes in its response to Plaintiffs' third motion to compel that "some documents and correspondence related to [c. diff.] are relevant and proportional," see Third Motion to Compel Resp. at 11 (emphasis in original).

With respect to the custody and undue burden objections, Centurion asserts it does not keep a record of all c. diff. infections by inmates at RMC, and, to respond to the requests, would have to manually search "through the individual medical records of all the inmates ever housed at RMC for the requested time." Doc. 171-5 at 3; Doc. 171-6 at 3, 5. Centurion contends it has access to medical records only of inmates currently under Centurion's care—not of former inmates, such as those who have died or have been released. See Third Motion to Compel Resp. at 13.

Of course, Centurion cannot be expected to disclose that which it does not have, but Centurion's custody objection is too broad for a number of reasons. First, it is unclear whether any medical records in Centurion's custody would be responsive to Plaintiffs' discovery requests and, if so, whether Centurion disclosed such documents. Second, to the extent Centurion refused

to search documents within its control because of an alleged undue burden, Centurion does not indicate how many medical records within its custody may be implicated by Plaintiffs' requests. Third, Plaintiffs assert that "Centurion did not engage with Plaintiffs regarding the manner in which this burden concern could be addressed." See Third Motion to Compel at 11.

Fourth, Plaintiffs seek more than medical records, and they represent in their motion that they have "uncovered forms prepared by Centurion employees reporting on infectious diseases," including c. diff., and that Centurion "maintains daily hospital charts that lists the illness . . . of each patient in its care." See Third Motion to Compel at 11. Centurion appears to concede that it could disclose, for instance, "thousands of pages of RMC bed charts for [c. diff.] cases." See Third Motion to Compel Resp. at 14-15.

Finally, Centurion indicates it already disclosed some of the documents Plaintiffs seek to compel through their motion. See Third Motion to Compel Resp. at 5, 11. Centurion says it "did produce documents responsive to this request (and other requests) that were appropriately limited in scope based on the previously asserted objections." Id. at 5. The phrase "this request" is vague as used; Centurion makes this statement while addressing multiple discovery requests. Id. Adding to the confusion is what Centurion means by "previously

asserted objections." <u>Id.</u> Thus, what Centurion disclosed and what it withheld is wholly unclear.

To the extent Centurion disclosed some records, it appears to have unilaterally altered the search parameters with respect to time (the month of Mr. Dettmann's death), subjects (the named Defendants) and scope (inmates who, like Mr. Dettmann, allegedly were not diagnosed, tested, or treated). <u>See</u> Doc. 171-6 at 4. <u>See also</u> Third Motion to Compel Resp. at 5. As to scope, Centurion contends, "Plaintiffs claim the Centurion Defendants <u>failed to diagnose</u> and treat Mr. Dettman[n]—yet they want documents that pertain to inmates <u>who were diagnosed</u> and treated." Third Motion to Compel Resp. at 11 (emphasis in original).

The Court finds Centurion's unilateral limitations on Plaintiffs' discovery requests are not reasonable. Documents of treatment provided or denied by Centurion healthcare providers (not just by the named Defendants) over a period of years certainly is relevant to Plaintiffs' <u>Monell</u> claim, which requires a showing of other instances of constitutionally inadequate healthcare. Moreover, the Court is not convinced that "records from inmates who <u>received</u> treatment for [c. diff.] [are] irrelevant to Plaintiff's [sic] claims … that Mr. Dettman[n] was <u>not</u> tested, diagnosed, or treated for [c. diff.]." Doc.

171-6 at 4 (emphasis in original). Such records could lead to matter that could bear on the issues.

Accordingly, the Court will direct Centurion to disclose to Plaintiffs any documents, including medical records, it has in its custody responsive to the interrogatory and RFP numbers two through four. The start-date for these discovery requests should be January 1, 2016, and the end date should be as stated in the requests. With respect to any medical records in Centurion's custody that are implicated by the requests, if Centurion continues to maintain identifying and disclosing those records would be unduly burdensome, Centurion shall disclose to Plaintiffs the nature of the burden imposed, and the parties shall meaningfully confer to reach a compromise such that Plaintiffs may obtain the information they seek. For instance, the parties shall discuss whether Centurion can make records available for Plaintiffs' inspection. Based on the information provided by the parties, the Court is not convinced that any burden or expense in responding to Plaintiffs' requests— with respect to medical records in Centurion's custody—outweighs the likely benefit of the documents sought.

### ii.   RFP Number One

In RFP number one, Plaintiffs seek "[a]ll [d]ocuments and [c]ommunications between January 1, 2015 and January 30, 2018 between

personnel at RMC . . . and any other person relating in whole or in part to [c. diff.]." Doc. 171-6 at 2. Centurion objects on the grounds of relevance, HIPAA, undue burden, proportionality, and because it does not have responsive documents in its custody and control. Id. at 2-3. The Court overrules the relevance and HIPAA objections for reasons previously stated but sustains Centurion's proportionality objection insofar as the request seeks documents that predate Centurion's contract with the FDOC and applies to all RMC personnel, not just Centurion employees providing healthcare for inmates at RMC. See Third Motion to Compel Resp. at 13 n.2.[13]

Finding the request seeks relevant information, the Court will direct Centurion to respond to the request as narrowed to Centurion employees providing healthcare for inmates at RMC between January 1, 2016, and January 30, 2018. To the extent Centurion does not have certain medical records in its custody or control, it should so state in its response, and to the extent it has medical records in its custody but identifying and reviewing them would cause an undue burden, Centurion should respond to and communicate

---

[13] In their motion, Plaintiffs characterize RFP number one as seeking "communications among Centurion employees" or "among medical staff," see Third Motion to Compel at 5, 12, 14, but that is not how the request is drafted, cf. Doc. 171-6 at 2.

with Plaintiffs as directed in section V.B.i. of this Order (addressing the interrogatory and RFP numbers two through four).

### iii.   RFP Numbers Five and Six

In numbers five and six of Plaintiffs' second RFP, Plaintiffs seek documents showing searches or queries Centurion employees or agents conducted in a program called "UpToDate" between January 1, 2016, and August 1, 2018, related specifically to c. diff. (number five), and documents showing searches or queries by any of the individual Centurion Defendants in the same program during the month Mr. Dettmann died, but not limited to the term "c. diff." (number six).[14] Doc. 171-6 at 5-6. Centurion objects on the grounds of relevance and proportionality. Id. at 6.

Centurion's objections are sustained as to RFP number five. Searches by Centurion employees who are not Defendants in this case and were not involved in treating Mr. Dettmann are not relevant to Plaintiffs' individual deliberate indifference claims. And Plaintiffs do not demonstrate—or even address, for that matter—how or why UpToDate search history for all "Centurion employees or agents" over a two-year period are relevant to their

---

[14] Plaintiffs made a third request (number seven) related to the UpToDate platform, see Doc. 171-6 at 7, but Plaintiffs do not contest Centurion's objection to that request, see Third Motion to Compel at 15.

Monell claim and proportional to the needs of the case. See Third Motion to Compel at 15-16.

However, Centurion's objections to request number six are overruled. Given there is evidence showing Centurion medical providers consult UpToDate to inform treatment protocols, see Doc. 171-2 at 1-2, Plaintiffs' request for searches conducted by the individual Defendants during the time they treated Mr. Dettmann is relevant and proportional to the needs of the case. Centurion represents it has partially responded to this request to the extent it can, saying Defendants "who have current UpToDate accounts—Dr. Marinette Gonzalez Morales, Dr. David Rodriguez, and Dr. Gerardo Pedroza-Sierra—search[ed] their accounts for queries related to c. diff.," and any responsive documents were produced. See Third Motion to Compel Resp. at 6. See also Doc. 171-7 at 3. Centurion is unable to access the UpToDate accounts of former employee-Defendants.

Even though Centurion partially responded to RFP number six, it limited the scope of its search to Defendants' queries for the term "c. diff.," whereas Plaintiffs' request is not so limited. Cf. Third Motion to Compel Resp. at 16 with Doc. 171-6 at 6. Plaintiffs seek "documents sufficient to show . . . all searches or queries of 'Up to Date' made by any of the Individual Defendants between January 1, 2018 and January 30, 2018." Doc. 171-6 at 6 (emphasis

27

added). A request for the results of any searches or queries the individual Defendants conducted for a one-month period is reasonable given Plaintiffs' claims and allegations. Plaintiffs allege medical providers failed to detect an obvious and easily treatable infection. See Am. Compl. ¶¶ 1-2, 26, 29-30. Thus, it is plausible the providers responsible for Mr. Dettmann's care consulted UpToDate to search symptoms Mr. Dettmann was presenting. Any such searches could have been conducted to inform treatment decisions, and the search parameters are otherwise limited in scope (the named Defendants) and time (one month). Thus, the Court will direct Centurion to supplement its response to RFP number six.

### C. Centurion's Motion to Quash and Motion for Protective Order

Centurion moves to quash non-party subpoenas, which Plaintiffs propose serving on the FDOC and the Correctional Medical Authority (CMA).[15] See Motion to Quash at 1. Centurion claims it has standing to move to quash non-party subpoenas under Rule 45 because it has "a personal right or privilege with respect to the subpoenas." Id. at 3. However, Centurion does not identify what that "personal right or privilege" may be. Id. If Centurion is referring to

---

[15] Plaintiffs explain the CMA is an independent state agency charged with "assist[ing] in the delivery of health care services for inmates in the [FDC] . . . by assuring that adequate standard of [medical] care are [sic] maintained at all [FDC] institutions." Motion to Quash Resp. at 3 (quoting with alterations Fla. Stat. § 945.603).

a "self-critical analysis privilege and medical peer review privilege," it concedes the Eleventh Circuit has not recognized such privileges. Id. at 11. In fact, the Eleventh Circuit has expressly rejected the peer review privilege. Adkins v. Christie, 488 F.3d 1324, 1329 (11th Cir. 2007) ("[T]he medical peer review process does not warrant the extraordinary protection of an evidentiary privilege in federal civil rights cases."). Accordingly, Centurion's motion to quash Plaintiffs' proposed subpoenas is due to be denied.

Centurion alternatively moves for a protective order on the ground that Plaintiffs' subpoenas "exceed the bounds of permissible discovery" by seeking information not relevant or proportional to Plaintiffs' Monell claim. Motion to Quash at 2 (citing Fed. R. Civ. P. 26(c)) With their motion, Centurion provides copies of the proposed subpoenas (Docs. 155-1, 155-2), and in their response, Plaintiffs summarize the documents they seek:

> First, [Plaintiffs] ask the [FDOC] and the CMA to produce documents submitted to the CMA pursuant to the CMA's audits and CAP[16] evaluations of the quality of medical care being provided to prisoners, along with communications about those evaluations and the medical records underlying the care being audited or evaluated. Second, they ask the [FDOC] to produce mortality reviews of certain prisoners who died under Centurion's care around the same time as Mr. Dettmann, along with communications about those reviews and the underlying medical records of the prisoners subject to the mortality reviews.

---

[16] "CAP" stands for "Corrective Action Plans." See Motion to Quash Resp. at 3.

29

Motion to Quash Resp. at 3-4 (emphasis and citations omitted). Plaintiffs seek the described documents from January 1, 2016, through the present. Doc. 155-1 at 11; Doc. 155-2 at 10. Centurion argues the list of inmates Plaintiffs identify (more than 220) is "arbitrary" and accuses Plaintiffs of engaging in a "fishing expedition." Motion to Quash at 7-8, 9.[17]

Plaintiffs explain their requests are relevant to their <u>Monell</u> claim, which requires they prove Centurion had "a persistent and wide-spread practice of violative conduct." Motion to Quash Resp. at 5. Plaintiffs elaborate:

> In order to prove their "<u>Monell</u>" claim, Plaintiffs must gather and present evidence showing Centurion does indeed have practices that are widespread—typically through evidence of multiple instances of misconduct substantially similar to Mr. Dettmann's alleged mistreatment. That is so because under the Eleventh Circuit's interpretation of <u>Monell</u>, "random acts or isolated incidents are insufficient to establish a custom or policy."

<u>Id.</u> Plaintiffs allege, in part, that Centurion had widespread practices of providing inadequate medical care, including ignoring signs of serious illness, refusing to order necessary diagnostic tests, understaffing prison medical units, and refusing to send inmates to outside facilities. <u>See</u> Am. Compl. ¶ 68.

---

[17] Centurion appears only to object to the request for "medical records and accompanying documents of more than 220 inmates." Motion to Quash at 7. As Plaintiffs note, Centurion "does not appear to oppose the CMA audit and CAP discovery on proportionality grounds." Motion to Quash Resp. at 4.

Plaintiffs further allege Centurion's policies were the moving force being the violation that allegedly led to Mr. Dettmann's death. Id. ¶ 69. Plaintiffs' ability to prove such allegations requires analysis of multiple instances of medical treatment or a lack thereof over a period of years. Their claim cannot be premised simply on a few isolated instances of inadequate medical treatment. As such, the Court finds Plaintiffs' proposed subpoenas seek relevant information proportional to the needs of the case.

However, to the extent Plaintiffs seek the disclosure of documents for months in which Centurion was not under contract with the FDOC, the requests are overbroad. As such, the Court will deny Centurion's motion, but will direct Plaintiffs to modify their subpoenas with respect to the dates: Plaintiffs should not seek documents pre-dating Centurion's contract with the FDOC.

### D. Plaintiffs' Fourth Motion to Compel & Motion to Strike

In their fourth motion to compel, Plaintiffs seek an order directing Centurion to produce documents responsive to Plaintiffs' ESI discovery requests, "but which Centurion has silently withheld from production based on its own unilateral and undisclosed assessment of . . . relevance." Fourth Motion to Compel at 1, 4-5. In response, Centurion says Plaintiffs are mistaken, and Centurion's counsel twice informed Plaintiffs' counsel that Centurion withheld

documents based only on relevancy objections previously asserted and which are before the Court through Plaintiffs' other motions to compel. Id. at 8.

With leave of Court (Doc. 181), Plaintiffs filed a reply (Doc. 186; Reply), clarifying their motion to compel concerns Centurion's responses to Plaintiffs' ESI discovery requests (for the original 23 terms). See Reply at 1-2. Plaintiffs explain, "The partial ESI protocol [to which the parties agreed] . . . was targeted at gathering relevant documents, so Centurion's claim that only 700 of the[] [11,000] documents are relevant to this case gives Plaintiffs considerable concern that Centurion made relevance assessments that are inappropriately narrow." Id. at 5 (emphasis in original).[18]

Accepting Centurion's description of the dispute, the Court's rulings on Plaintiffs' other motions to compel may have mooted this motion. However, Plaintiffs' dispute appears to be solely about the 23 original terms Centurion agreed to search, apparently without objection. To the extent Centurion already responded to ESI discovery requests based on agreed-upon terms and withheld documents it determined after-the-fact were irrelevant, and to the extent the Court's rulings in this Order would not otherwise result in the

---

[18] The Centurion Defendants ask the Court to strike the reply as "outside the scope of the Court's Order." Motion to Strike at 1. Upon review, the Court finds Plaintiffs' reply is not outside the scope of the Court's Order, but rather clarifies the nature of the dispute between the parties. As such, the motion to strike is due to be denied.

disclosure of said documents, the Court will direct Centurion to inform Plaintiffs what discovery requests yielded responsive ESI that were withheld on relevance grounds and to describe generally what kinds of documents have been withheld. Plaintiffs' motion will be granted in this respect only.

Accordingly, it is now

**ORDERED:**

1.     Plaintiffs' motion to strike and/or motion to compel (Doc. 132) is **GRANTED in part and DENIED in part**. The motion is **granted** only to the extent the Centurion Defendants shall respond to Plaintiffs' interrogatory number 6 within **seven days** of the date of this Order.

2.     Centurion's motion to confess judgment and pay funds into the Court registry (Doc. 139) is **DENIED**.

3.     Plaintiffs' second motion to compel discovery (Doc. 147) is **GRANTED in part and DENIED in part**. The motion is **granted** to the extent Centurion, within **fourteen days** of the date of this Order, shall propose a list of alternative ESI search terms related to Plaintiffs' <u>Monell</u> claim and engage in good-faith discussions with Plaintiffs to compromise on a revised list of search terms specifically targeted to Plaintiffs' <u>Monell</u> claim; searches for any agreed-upon <u>Monell</u> terms should be for the following timeframe: January 1, 2016, through August 6, 2021; and, within **seven days** of the date

33

of this Order, Centurion shall produce unredacted versions of documents it previously disclosed to Plaintiffs with third-party PHI redacted.

4.    The Centurion Defendants' motion for protective order (Doc. 149) is **DENIED as moot**.

5.    Centurion's motion to quash and motion for protective order (Doc. 155) is **DENIED**. However, before serving their subpoenas on the FDOC and the CMA, **Plaintiffs** shall modify the timeframe, as stated in this Order.

6.    Plaintiffs' third motion to compel discovery (Doc. 171) is **GRANTED in part** to the extent Centurion, within **twenty-one days** of the date of this Order, shall respond to or supplement responses to Plaintiffs' second set of interrogatories and second request for production of documents, as stated in this Order.

7.    Plaintiffs' fourth motion to compel (Doc. 172) is **GRANTED** only to the extent Centurion, within **seven days** of the date of this Order, must disclose to Plaintiffs whether, in responding to Plaintiffs' ESI discovery requests, it withheld responsive documents Centurion deemed were irrelevant and, if so, state what discovery requests yielded responsive documents that were withheld on relevance grounds and generally describe what kinds of documents were withheld.

8.    The Centurion Defendants' motion to strike (Doc. 188) is

**DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of

February 2022.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record

35